537 A.2d 936

Marisol E. Colon, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 19, 1987, before Judges CRAIG and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*Jeffrey L. Greenwald,* for petitioner.

*Mary Frances Grabowski,* Assistant Counsel, for respondent.

OPINION BY JUDGE PALLADINO, February 17, 1988:

Marisol E. Colon (Petitioner) appeals from an order of the Department of Public Welfare (DPW) affirming the termination of her entitlement to benefits.[1]

---

[1] Petitioner's benefits under Aid to Families with Dependent Children (AFDC) and Medical Assistance (MA) were to be terminated pursuant to the DPW order.

Petitioner began receiving benefits in April, 1984 based on a deprivation factor of the absence of her husband, George Colon. The record indicates that at the time Petitioner began receiving benefits she lived at 1222 S. Lebanon St. On August 16, 1985 Petitioner and her three children moved to 944 Evans St. Approximately three months later, on November 7, 1985, the Northampton County Assistance Office (CAO) received a complaint that Mr. Colon was living at 944 Evans St.

CAO then sought information regarding the validity of the complaint. Various statements and documents were produced, including: statements from Petitioner and Mr. Colon that he did not reside at 944 Evans St.; a report from the Office of Employment Security (OES) stating that, as of September 5, 1985 Mr. Colon's address was 944 Evans St.; a document from Mr. Colon's employer stating his address as 944 Evans St.; and, a statement from Petitioner's landlord that Mr. Colon was residing at 944 Evans St. Based on this information, CAO sent advance notice to Petitioner proposing to terminate assistance benefits because of "inconsistant [sic] information regarding the complaint." R. Item 2.

Petitioner appealed and sought a fair hearing. In the period of time between Petitioner's request for a hearing and the date of the hearing, CAO sought additional information regarding Mr. Colon's address. This further investigation included contacting the Domestic Relations Office (DRO), which provided its record address for Mr. Colon as 1129-A Garfield St.[2] CAO then contacted the Public Housing Authority (PHA) and requested information on the household composition at the Garfield Street address. PHA records reflected that Mr. Colon was not a member of that household.[3]

---

[2] This is Mr. Colon's parents' address.

[3] CAO also attempted to contact Pete's Motel to determine whether Mr. Colon was residing there, as he had stated, and to

At the fair hearing, held on January 15, 1986, Petitioner sought to refute the evidence offered by CAO that Mr. Colon resided with her. She did not dispute that OES and Mr. Colon's employer listed him as residing at 944 Evans St., but stated that Mr. Colon had used her address without her permission. She also read a statement from Mr. Colon that he did not reside with her[4] and referred to the rent receipts Mr. Colon had provided. Petitioner stated that she did receive mail addressed to Mr. Colon at the Evans Street address, but only because Mr. Colon's mail was being forwarded, by the post office, from the Lebanon Street address. Petitioner stated she gave that mail to Mr. Colon's mother. There was much dispute over Mr. Colon's unemployment compensation checks and the fact that they were sent to the Evans Street address.

Petitioner testified that she had not given Mr. Colon her address until one of their children became ill in October of 1985. She stated that Mr. Colon must have learned her address from one of the yellow forwarding stickers used by the post office. N.T. at 23. It was noted at that time that unemployment compensation checks are not forwarded and therefore Mr. Colon could not have learned Petitioner's address through a forwarding label of one of his checks. N.T. at 23. In response, Petitioner stated that it was not unemployment compensation checks which had forwarding labels, but other mail addressed to Mr. Colon. N.T. at 23. However, Petitioner admitted that Mr. Colon's unemployment compensation checks were arriving at the Evans Street address and that she was giving these to Mr. Colon's mother

---

determine the validity of receipts for rent from that establishment which Mr. Colon had provided to CAO. However, there was no answer when CAO phoned the motel.

[4] The notarized statement is not in the record, although it is referred to by the hearing officer in her findings of fact.

with his other, forwarded, mail. Petitioner testified that she did not return any of the mail to the post office or to the senders.

In attempting to refute the landlord's statement, Petitioner testified that she believed the landlord was seeking vengeance because Petitioner had notified the Health Department of problems at the Evans Street building.[5] Veronica Reyes, a Family Services Worker for the Southeast Neighborhood Center, testified to the same effect.

The hearing officer denied Petitioner's appeal, concluding that Petitioner had failed to meet her burden of proof. After making findings of fact and noting the relevant regulatory language, the hearing officer stated, in part:

> In this case the facts and testimony reveal the CAO has made attempts to assist their client by making collateral contacts in accordance with regulation. In three instances, the collateral source reveals Mr. Colon's address is 944 Evans Street. In only one instance was another address shown for Mr. Colon by a collateral source. DRO lists Mr. Colon at his mother's address on Garfield Street. However, that information was not substantiated by PHA. The finding of facts thus reveal a preponderance of the evidence in favor of the County and the County actions. . . . The facts and testimony reveal appellant has failed, to sustain her burden of proof. Appellant's testimony is conflicting. The tapes reveal appellant testified she received and forwarded Mr. Colon's UC checks to him with the yellow (forwarding) postal sticker attached. Appellant 'forgot' to remove the sticker and Mr. Colon thus

---

[5] Petitioner has since moved to a new location.

learned of her whereabouts.[6] The facts, however, reveal appellant moved to 944 Evans Street on August 16, 1985. Mr. Colon's August 16, 1985 UC check was not[7] returned to OES because OES checks are not forwardable. Mr. Colon reported a change of address (to 944 Evans Street) to OES on September 5, 1985. Thus, there would have been no reason for Mr. Colon's UC checks to have a yellow sticker attached. Also, the affidavit and rent receipts supplied by Mr. Colon and which were provided to the Department are insufficient proof of Mr. Colon's current residence in view of the other evidence contained in the hearing record; i.e., Mr. Colon provided various addresses for himself to various agencies for concurrent periods of time: From September 5, 1985, OES and the employer list 944 Evans Street, and from July, 1985 DRO lists 1129 Garfield Street. The affidavit and rent receipts show 1021 S. Fourth Street from October 28, 1985. In view of all of the above, it is concluded that appellant has failed to sustain her burden of proof. The County's adverse action is considered correct and in accordance with Departmental regulations. Appellant's appeal is thereby denied.

---

[6] As noted earlier, Petitioner offered the explanation that it was not an unemployment check with a forwarding label, but other mail which was forwarded from the Lebanon Street address. N.T. at 23.

[7] The August 16, 1985 unemployment check *was* returned to OES, as stated in the hearing officer's finding of fact # 13. The inclusion of the word "not" in this section of the decision was apparently an oversight.

Petitioner appealed to the Office of Hearings and Appeals, which, by order dated February 6, 1986, affirmed the termination of AFDC and MA benefits. Petitioner then sought reconsideration, and in support presented her own statement and the statements of George Colon, Ms. Reyes, and Sue Bergman, Program Director at the Southeast Neighborhood Center. All statements supported Petitioner's version of the situation.

In a letter to the Executive Deputy Secretary of the Office of Hearings and Appeals,[8] Deborah Fuller, who had presented CAO's case before the hearing officer, stated she had reviewed the statements and found the information provided by Petitioner was still inconsistent. Ms. Fuller's letter focused on the unemployment compensation checks and the fact that Mr. Colon had notified OES that his address was 944 Evans St. on September 5, 1985, although Petitioner had repeatedly stated she did not actually provide Mr. Colon with that address until October of 1985. On March 24, 1986 DPW denied Petitioner's request for reconsideration. Petitioner has appealed from this final order.[9]

---

[8] R. Item 5.

[9] Petitioner's petition for review to this court was filed on April 21, 1986. Because the thirty day appeal period began on February 6, 1986, and *not* on March 24, 1986, the date reconsideration was denied, Petitioner's appeal is untimely. Pa. R.A.P. 1701(b)(3) and Pa. R.A.P. 1512(a)(1). We raise the issue *sua sponte* because it is jurisdictional. *Ormes v. Department of Public Welfare*, 98 Pa. Commonwealth Ct. 588, 591, 512 A.2d 87, 89 n.5 (1986). We have already invalidated the DPW regulation (55 Pa. Code §275.4(h)(4)(iv)) which purports to vary the appeal period when a request for reconsideration has been made. *See Modzelewski v. Department of Public Welfare*, 109 Pa. Commonwealth Ct. 519, 531 A.2d 585 (1987); *Nelson v. Department of Public Welfare,* 103 Pa. Commonwealth Ct. 21, 519 A.2d 1062 n.1 (1986); *Ormes*. However, the regulation was invalidated prospectively only. *Ormes*. Thus, because Petitioner appealed to this court on April 21, 1986, prior to the *Ormes* decision of July 10, 1986, we will address the appeal as one from the termination of benefits. *See Nelson*.

Petitioner argues that the DPW decision is erroneous because 1) Petitioner did everything within her power to verify her eligibility and, 2) the decision is based on actions of Mr. Colon which were beyond Petitioner's control. In short, Petitioner asserts that the circumstances of this case created a burden of proof she could not possibly satisfy.

Our scope of review is limited to a determination of whether an error of law has been committed, constitutional rights have been violated or whether findings of fact are supported by substantial evidence.[10] *Nelson v. Department of Public Welfare,* 103 Pa. Commonwealth Ct. 21, 519 A.2d 1062 (1986).

The regulation at issue provides, in relevant part: §201.4. Procedures.

(a) *Eligibility verification.* Eligibility verification will be as follows:

(1) *Initial contacts.* Regulations concerning initial contacts are as follows:

(i) If the client is unable to obtain the necessary evidence to verify eligibility, the CAO will obtain it from public records, collateral sources and the like. . . .

(ii) The authorization for information form will only be used in those specific instances when the client is unable to provide the evidence to establish eligibility. The client must consent to the disclosure information as a condition of eligibility.

(iii) In certain situations, it may be impossible to secure valid substantiation beyond the

---

[10] We normally would use an abuse of discretion standard in reviewing a denial of reconsideration. *Modzelewski.* However, as noted above, because of the timing of Petitioner's appeal and our earlier decisions, we are addressing the order terminating benefits. *See* note 9, above.

statement of the applicant on certain eligibility factors. The worker will then make a reasonable decision based on his judgment of all the available evidence, that is, the credibility of the person, and the validity of other supporting or conflicting evidence. . . .

(iv)   When the evidence a client supplies is inadequate, or is incomplete, inconsistent, or indeterminate in view of other evidence, the worker will inform the client that additional evidence will be required. Together, the worker and client will determine acceptable sources for further evidence. If the evidence provided by the client is still unacceptable, the worker will consult a collateral source of information. . . .

(2)   *Collateral contacts.* Use of collateral contacts will be as follows:

(i)   Public records, that is, courthouse records, vital statistics, motor vehicle registration and the like and employers and banks. . . .

55 Pa. Code §201.4(a)(1) and (2).

It is not disputed that Petitioner bore the burden of proving her husband did not live with her. *Augelli v. Department of Public Welfare,* 79 Pa. Commonwealth Ct. 34, 468 A.2d 524 (1983). Petitioner asserts, however, that she did everything possible to satisfy her burden and should not be penalized for Mr. Colon's unauthorized adoption of her address. We must disagree.

Our review of the record establishes that the requirements of the regulation were met. CAO obtained information from Petitioner and then sought information from collateral sources. Petitioner asserts that subsection (iv) was not complied with because no one told Petitioner what further evidence would be necessary. This assertion does not take into consideration subsection (iii), which recognizes the heavy burden placed on

clients to prove a negative. Subsection (iii), in fact, makes clear that Petitioner's situation was foreseen, and provides for resolution by imposing a burden of discretion on the worker who is presented with conflicting evidence from a client and collateral sources. The worker entrusted with such discretion assumes weighty responsibilities in making determinations. There are times this court would, perhaps, reach a conclusion contrary to that rendered by a worker. However, that is not within our scope of review.

In support of her position, Petitioner relies heavily on *Augelli,* wherein this court stated: "We are at a loss to conceive what documentation or other means Petitioner might have had available under these peculiar circumstances to substantiate the husband/father's absence from the household." 79 Pa. Commonwealth Ct. at 36, 468 A.2d at 525. However, in *Augelli* the hearing officer had found that the client's spouse was not residing with the client. *Id.* The Secretary reversed that finding because Ms. Augelli had not provided *documentary* evidence that her husband did not reside with her.[11] *Id.* at 37, 468 A.2d at 525. We reversed the Secretary's decision, holding that it was an error of law for the Secretary to increase an applicant's burden of proof, beyond that found in the regulations, by requiring an applicant to produce documentary evidence. *Id.* *See Nelson.* Furthermore, the evidence relied on by DPW in *Augelli* was characterized as weak by this court, 79 Pa. Commonwealth Ct. at 38, 468 A.2d at 525-26, and did not include record evidence such as that in the present case.

---

[11] *See also Burks v. Department of Public Welfare,* 48 Pa. Commonwealth Ct. 6, 408 A.2d 912 (1979), wherein this court noted that the client's non-documentary evidence was insufficient to refute DPW's overwhelming documentary evidence, but not because of the classification of the evidence.

We find the present case distinguishable from *Augelli*. Here, OES, Mr. Colon's employer and Petitioner's landlord all stated Mr. Colon resided at 944 Evans St. The credibility of the landlord's statement was attacked, but the hearing officer relied on that statement nonetheless. This was not error, as the hearing officer is charged with making credibility determinations. *Nelson*. Nor did the hearing officer adopt Petitioner's explanation of the disputed unemployment compensation checks and the forwarding labels. This, too, was her prerogative as the arbiter of credibility.

As stated by this court in *Nelson*, the regulation at issue does "not specify any evidentiary requirements or limitations." 103 Pa. Commonwealth Ct. at 26, 519 A.2d at 1064. We further stated: "The hearing officer must decide whether to believe the evidence based upon his assessment of the totality of the presentation." *Id*. at 25, 519 A.2d at 1064. Thus, however persuasive we might find Petitioner's explanation for the circumstances of her case, it is not for us to determine who the agency is to believe.

Accordingly, the order of the Department of Public Welfare is affirmed.

## ORDER

AND NOW, February 17, 1988, the final order of the Department of Public Welfare in the above-captioned matter is affirmed.